# EXHIBIT 1

Livius M. Ilasz, Esq.
**Ilasz & Associates**
1035 Route 46 East, Suite 105
Clifton, New Jersey 07013
P: (973) 773-9060
F: (212) 480-2958
Attorneys for Plaintiff, Miroslaw Wierzbicki

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK DIVISION

MIROSLAW WIERZBICKI,

                           Plaintiff,

        vs.

CITY OF JERSEY CITY;
JERSEY CITY POLICE DEPARTMENT;
and John Does 1-2 ,

                      Defendants.

CIVIL ACTION NO.:

## COMPLAINT

Plaintiff, MIROSLAW WIERZBICKI ("Plaintiff"), with a residence address of 1715 Stanhope Street, Ridgewood, New York 11385, by and through undersigned counsel, alleges as follows upon information and belief:

## JURISDICTION STATEMENT AND PARTIES

1.     This is an action for damages arising out of one or more violations of federal and state law, and is brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

2.     This Court has jurisdiction over this action pursuant to the provisions of 28 U.S.C. §1331 and §1343 in that this is an action to redress violations of Plaintiff's federally protected Constitutional rights. Jurisdiction over the state law claims is founded upon the supplemental jurisdiction of this Court, 28 U.S.C. §1367.

3.      At all times relevant herein, Plaintiff, Miroslaw Wierzbicki, is and was a legal resident in the United States, and a resident of Queens County, New York, and is otherwise *sui juris*.

4.      At all relevant times hereto, Defendant City of Jersey City ("City"), was a municipality duly organized and existing under the laws of the State of New Jersey.

5.      At all relevant times hereto, Defendant Jersey City Police Department ("JCPD"), was a municipal subdivision and arm of the City, located at 207 7th Street, Jersey City, New Jersey 07302.

6.      At all relevant times hereto, Defendant John Doe 1 was a male citizen and resident of New Jersey, acting in his capacity as a JCPD officer and was acting under color of state law.  He is sued in his individual and official capacity.

7.      At all relevant times hereto, Defendants John Doe 2 was a male citizen and resident of New Jersey, acting in his capacity as a JCPD officer and was acting under color of state law.  He is sued in his individual and official capacity.

8.      Defendants John Does 1 and 2 may be collectively referred to as the "PO Defendants."

9.      All of the above defendants may be referred to as "Defendants" in the aggregate.

10.      At all times relevant hereto, Defendant City and JCPD, acting under color of state law, were responsible for hiring, training, supervision, discipline, retention, termination and promotion of the PO Defendants, inclusive of the defendants named herein.

11.      Each and all of the acts of the PO Defendants and other members of the City and JCPD involved in this incident were performed under the color and pretense of the constitutions, statutes, ordinances, regulations, customs and usages of the United States of America and the State of New Jersey, under color of law and by virtue of their authority as law enforcement

2

Case 2:19-cv-17721-BRM-ESK Document 19-1 Filed 06/04/20 Page 3 of 43 PageID: 215

officers for Defendants City and JCPD, and in the scope of their employment with Defendants City and JCPD.

12.    The acts and practices constituting the violations alleged below have all occurred within the State of New Jersey, which is properly within the jurisdiction of the United States District Court in and for the District of New Jersey. Venue in the District of New Jersey, Newark Division, is proper because the incident which is the subject of this lawsuit occurred in the State of New Jersey and Defendants are located in this venue. *See* 28 U.S.C. §1391(b)(1) and §1391(b)(2).

13.    This action has been commenced within the statute of limitations for all Federal and pendent State causes of action.

14.    Plaintiff has complied with all conditions precedent to the filing of this lawsuit pursuant to Title 59, New Jersey Statutes; all applicable notices have been provided to Defendants.

15.    Plaintiff has retained Ilasz & Associates to represent his interests in prosecuting this action, and said law firm is entitled to their reasonable attorneys' fees and costs incurred in connection herewith.

## FACTUAL ALLEGATIONS

16.    The subject incident arises out of the use of unlawful and excessive force against Plaintiff by the PO Defendants, and perhaps others, resulting in serious personal injuries to Plaintiff and the deprivation of his civil rights.

17.    On or about September 8, 2017 at approximately 12:00 noon, while the Plaintiff was riding his bicycle near the building situated at 500 Martin Luther King Boulevard in Jersey City, New Jersey, the PO Defendants alighted from their police vehicle, ran up behind the

3

Plaintiff, shoved Plaintiff from the back off of his bicycle onto the ground such that Plaintiff fell onto his left side immediately causing serious personal injury to the then-61 year old Plaintiff.

18. Despite the obvious and immediate injuries including a swollen wrist, the PO Defendants handcuffed the Plaintiff.

19. The PO Defendants then searched the Plaintiff's pockets, backpack and cellular telephone cover and wallet.

20. The Plaintiff does not speak English. The Plaintiff speaks Polish.

21. The PO Defendants called for assistance and a third Jersey City Police Officer, who speaks Polish, appeared at the scene. Upon information and belief, this third Police Officer's last name is Wojchiech (sp?) ("PO Wojchiech"). PO Wojchiech removed the Plaintiff's handcuffs.

22. Upon information and belief, no report of the incident was created by the Defendants.

23. Plaintiff was not given any explanation for the acts of the Defendants.

24. Plaintiff was not offered or provided any medical assistance by the Defendants.

25. As a direct and proximate result of the Defendants' intentional, willful, reckless, malicious and/or negligent conduct as aforesaid, the Plaintiff suffered *inter alia* a fractured right wrist, as well as, mental and emotional trauma; all of which continue to this day and are permanent in nature.

26. As a direct and proximate result of the Defendants' conduct as aforesaid, the Plaintiff has experienced, and continues to experience, severe pain and suffering due to his physical injuries, including mental anguish, mental and emotional suffering, embarrassment, shame, and humiliation, as well as, damages to his constitutional rights.

27.      Each of the PO Defendants acted under color of state law in their official capacity to deprive the Plaintiff of his clearly established right to be free from excessive force under the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States and by 42 U.S.C. §§1983 and 1988.

28.      Plaintiff is entitled to compensation for the violation of his constitutional rights and the constitutional harms that the Defendants inflicted upon him resulting in his physical injury.

## ADDITIONAL FACTS SURROUNDING LIABILITY

29.      Defendant JCPD is the ultimate policymaking authority for all officially-adopted policies and procedures implemented by employees of Defendant JCPD, including all PO Defendants. Further, it is the entity legally responsible for the hiring, retention, supervision, and training of employees of the JCPD, as well as, administering any discipline to said employees.

30.      The JCPD has a long-standing de-facto policy of unlawful profiling as has been acknowledged by New Jersey governors, attorneys general and the local politicians. Upon information and belief, in the past few years alone, more than ten (10) current and former JCPD officers have been charged with corruption and/or using excessive force. *See* miscellaneous news articles annexed hereto as **Exhibit 1**.

31.      Defendant JCPD has been placed on notice that there is a pervasive and systematic pattern, custom and practice within the JCPD to unlawfully stop, search, arrest and use excessive force by rendering vicious beatings to members of the public – even those who do not resist arrest, including innocent bystanders and those accused of minor criminal infractions – and to make great efforts to use excessive force outside of the view of third-party witnesses, and frequently while the person detained is subdued, restrained, or otherwise still in handcuffs.

32.     False reports are rendered, and prosecutions are officially pursued against the victims of these unconstitutional beatings and excessively forceful arrests.  Finally, the internal investigations into such allegations of excessive force are almost always a virtual whitewash, as JCPD officers are rarely, if ever, punished for such conduct even when investigations reveal conduct that requires actions to be undertaken against the officer(s) involved to prevent such civil rights and constitutional violations in the future.

33.     Specifically, the notice to the JCPD of the unconstitutional conduct of its officers and employees has occurred through notices of intent to sue, lawsuits, internal affairs investigations, and media reports, yet Defendant JCPD fails to take any remedial action.

34.     Thus, Defendant JCPD is also on notice of the fact that a systemic and pervasive pattern and practice of excessive force and wrongful and unreasonably forceful arrests exist within the JCPD and that members of the citizenry are the victims of these acts committed by JCPD officers in violation of the Fourth, Fifth, Eighth and Fourteenth Amendments.  Defendant JCPD officers are allowed and indeed encouraged to commit these wrongful and unconstitutional acts with impunity knowing that no discipline, much less meaningful discipline, will follow for acts of excessive force.  Such illegal conduct is ratified and condoned by Defendant JCPD.

35.     The PO Defendants are comfortable in the knowledge that any act of excessive force that they commit will not result in discipline by Defendant JCPD even when the act of excessive force occurs.  Thus, the lack of discipline for acts of excessive force, allowed the PO Defendants to wrongfully stop, search, detain and commit excessive and unreasonable force against the Plaintiff because the PO Defendants knew that there would be no official reprisals for their actions against the Plaintiff.

36.     Upon information and belief, the discovery phase of this litigation will further reveal many other instances where Defendant JCPD, by and through its officers and employees,

has allowed, condoned, and encouraged a systemic, ratified, and sanctioned policy of acts of excessive and unreasonable force, wrongful stops, wrongful searches, wrongful detainment and racial profiling only to fail to discipline personnel for such actions, much less properly supervise and train to prevent further abuses.

## CAUSES OF ACTION

### COUNT ONE

### VIOLATION OF 42 U.S.C. §1983

#### (Civil Action for Deprivation of Rights)

37.    Plaintiff re-alleges and re-avers each and every allegation set forth in the preceding paragraphs as if fully set forth herein, and further states as follows:

38.    At all times material hereto, Plaintiff had the constitutional right to be free from the use of excessive and unreasonable force against his person.

39.    The PO Defendants individually and as a group participated and conspired with one another, under color of state law, to deprive Plaintiff of his constitutional rights by, among other things:

    a.  Using excessive and unreasonable force on Plaintiff;

    b.  Lacking probable cause or reasonable suspicion to suspect that Plaintiff committed, was committing or was about to commit a crime;

    c.  Lacking probable cause or reasonable suspicion to stop Plaintiff;

    d.  Lacking probable cause or reasonable suspicion to search Plaintiff;

    e.  Lacking probable cause or reasonable suspicion to seize Plaintiff;

    f.  Lacking probable cause or reasonable suspicion to detain Plaintiff;

    g.  Depriving Plaintiff of his right to due process;

    h.  Depriving Plaintiff of his right to equal protection under the laws;

i.  Subjecting Plaintiff to cruel and unusual punishment

40.  In committing the acts complained of herein, all named Defendants acted under color of state law to deprive Plaintiff of his clearly established constitutionally protected rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

41.  The PO Defendants violated 42 U.S.C. §1983 by inflicting serious personal injury upon Plaintiff that was grossly disproportionate to the force that would have been necessary to arrest Plaintiff in violation of his rights under the United States Constitution.

42.  The PO Defendants, while acting in their capacity as police officers for Defendants City and JCPD and under color of state law, did intentionally use excessive and unreasonable force by forcefully and violently stopping Plaintiff and restraining him.

43.  The PO Defendants subjected Plaintiff to further indignities by failing to file any report of the incident in an effort to avoid their identification, and in an effort to conceal this incident, and in an effort to avoid apprehension and prosecution for their unlawful actions.

44.  The above acts constitute a violation of the Civil Rights Act, 42 U.S.C. §1983 for violation of one's civil and constitutional rights under color of state law.

45.  As a proximate result of the aforesaid acts by Defendants, Plaintiff has been damaged and has suffered severe physical and emotional injuries including mental distress and anguish.

## COUNT TWO

### Violation of 42 U.S.C. §1981

### (Violation of Equal Rights Under the Law)

46.  Plaintiff re-alleges and re-avers each and every allegation set forth in the preceding paragraphs as if fully set forth herein, and further states as follows:

47.     The acts of the PO Defendants, as well as, the JCPD and City constitute a violation of the Civil Rights Act, 42 U.S.C. §1981.

48.     The acts of the Defendants were motivated by racial, ethnic, national origin and/or other unlawful animosity and/or by desire to injure, oppress and intimidate the Plaintiff because of his race, ethnicity, national origin, or other protected attribute.

49.     As a proximate result of the above-mentioned acts, Plaintiff has suffered damages including serious physical injuries, severe emotional distress and mental anguish, and deprivation of his rights under §1981, as well as, the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

## COUNT THREE

### Violation of 42 U.S.C. §1985

### (Conspiracy to Violate Civil Rights)

50.     Plaintiff re-alleges and re-avers each and every allegation set forth in the preceding paragraphs as if fully set forth herein, and further states as follows:

51.     The acts of the PO Defendants, as well as, the JCPD and City constitute a violation of the Civil Rights Act, 42 U.S.C. §1985, namely a conspiracy to violate the civil rights of Plaintiff based on his race, ethnicity, national origin, or other unlawful basis.

52.     As a proximate result of the above-mentioned acts, Plaintiff has been damaged and has suffered severe emotional distress and mental anguish, as well as, deprivation of rights under the Civil Rights laws.

## COUNT FOUR

### VIOLATION OF 42 U.S.C. §1986

### (Failure to Prevent Violations of Civil Rights)

53.     Plaintiff re-alleges and re-avers each and every allegation set forth in the preceding paragraphs as if fully set forth herein, and further states as follows:

54.     The Defendants had knowledge of the discrimination/violation of constitutional rights perpetrated on Plaintiff but neglected and failed to prevent said wrongful and illegal acts when they had power to do so.

55.     This neglect, aid and refusal to prevent or rectify is a violation of the Civil Rights Act, 42 U.S.C. §1986.

56.     As a proximate result of the above-mentioned acts, Plaintiff has been damaged and has suffered serious physical injury, severe emotional pain, suffering, anguish, and distress and a deprivation of rights under the Civil Rights laws.

## COUNT FIVE

### Violation of 42 U.S.C. §1983

### (Negligent Screening, Hiring, Training, Supervising and Retention of Dangerous Discriminatory Police Officers)

57.     Plaintiff re-alleges and re-avers each and every allegation set forth in the preceding paragraphs as if fully set forth herein, and further states as follows:

58.     Defendant JCPD was negligent in screening, hiring, training, supervising, disciplining and/or retaining the PO Defendants in this matter, who they knew or should have known were dangerous and/or acted in an ethnically xenophobic and discriminatory manner.

59.     Defendant JCPD is liable for the aforesaid acts both under the doctrine of *respondeat superior* and because it permitted conditions to exist which facilitated and/or permitted such conduct to occur.

## COUNT SIX

### New Jersey Civil Rights Action/State Constitutional Claim

### (N.J.S.A. 10:6-1, *et seq.*)

60.    Plaintiff re-alleges and re-avers each and every allegation set forth in the preceding paragraphs as if fully set forth herein, and further states as follows:

61.    The illegal, unconstitutional and discriminatory acts of the Defendants constituted acts of a *de facto* policy to discriminate, use unlawful force and assault Plaintiff. The actions of the Defendants aforesaid also represent a *de facto* policy to deny Plaintiff his due process, equal protection and to be free from excessive force and cruel and unusual punishment. All of these violations contravene Plaintiff's constitutional rights under the New Jersey State Constitution including, but not limited to, Article I, Section 1; Article I, Section 5 – denial of rights; and Article I, Section 7 and the New Jersey Civil Rights Act (N.J.S.A. 10:6-2).

62.    Each individual Defendant was acting at all times in furtherance of his employer.

63.    As a proximate result of the aforesaid conduct, Plaintiff has been damaged, including violation of his civil rights and has suffered severe physical injury and emotional pain and suffering.

## COUNT SEVEN

### Willful Disregard

64.    Plaintiff re-alleges and re-avers each and every allegation set forth in the preceding paragraphs as if fully set forth herein, and further states as follows:

65.    The conduct of Defendants was outrageous, wanton and willful, in reckless indifference to the rights, safety and interests of Plaintiff, and taken with conscious disregard of their duties and obligations.

66.     Defendants acted with deliberate indifference to the rights of persons in their domain, and Plaintiff, violating Plaintiff's right to freedom from deprivation of liberty without due process of law in violation of the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States and the Civil Rights Act, 42 U.S.C. §1986.

67.     As a proximate result of the above-mentioned acts, Plaintiff has been damaged and has suffered serious physical injury and severe emotional pain, suffering, anguish and distress and a deprivation of rights under the Civil Rights laws.

## COUNT EIGHT

### Assault and Battery

68.     Plaintiff re-alleges and re-avers each and every allegation set forth in the preceding paragraphs as if fully set forth herein, and further states as follows:

69.     The PO Defendants, and perhaps others, intended to cause harmful or offensive contact with Plaintiff, and/or an imminent apprehension of such a contact.

70.     Plaintiff was thereby put in such imminent apprehension.

71.     Defendants, individually and/or acting in concert, contacted Plaintiff in a harmful and offensive manner without cause and/or legal justification.

72.     As a proximate result of the aforesaid conduct, Plaintiff has been damaged and has suffered serious physical injury and severe mental and emotional pain, suffering, anguish and distress.

73.     As a proximate result of the Defendants' conduct, Plaintiff has been damaged and has suffered serious physical injury and severe mental and emotional pain, suffering, anguish and distress.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment against the Defendants, including but not limited to:

1. An award of compensatory damages and punitive damages against Defendants, together with interest, costs of suit and attorneys' fees; for his personal injuries; pain and suffering; past, present and future medical expenses; attorneys' fees; mental anguish; violation of his civil liberties; loss of earning capacity; and loss of capacity to enjoy life; as well as his costs, and all other relief the Court deems just and proper.

2. A judgment declaring that the JCPD's policy, practice and/or custom of unlawful stops, searches, arrests, and acts of excessive and unreasonable force, wrongful arrests and ethnic profiling challenged herein are unconstitutional in that they violate the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act, 42 U.S.C. §1986, and the Constitution of the State of New Jersey, and that its implementation, enforcement and sanctioning by JCPD officers is a direct and proximate result of the following policies, practices and/or customs of the JCPD:

   a. Failing to adequately screen, train and supervise officers;

   b. Failing to adequately monitor the JCPD officers and discipline those JCPD officers who violate the constitutional rights of residents and individuals in the communities they patrol; and

   c. Encouraging, sanctioning and failing to rectify the JCPD's unconstitutional policies.

3. Issue an order for the following injunctive relief:

   a. Enjoining the JCPD from continuing its policy, practice and/or custom of unlawful stops, searches, arrests and acts of excessive and unreasonable force, wrongful detainment and ethnic profiling;

13

b.  Requiring the JCPD to institute and implement improved policies and programs with respect to training, discipline and promotion designed to eliminate the JCPD's policy, practice and/or custom of unlawful stops, searches, detainment, arrest and acts of excessive and unreasonable force, wrongful arrests and ethnic profiling;

c.  Requiring the JCPD to deploy JCPD officers with appropriate and adequate supervision; and

d.  Requiring an independent overseer to monitor stops, searches, detainments, arrests and acts of force to ensure that same are reported and to determine whether such reported stops, searches, detainments, arrests and acts of force have comported with constitutional requirements.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable under the law.

## DESIGNATION OF TRIAL COUNSEL

Plaintiff designates the undersigned as trial counsel.

Dated:  September 6, 2019

Livius M. Ilasz, Esq.
Ilasz & Associates
Attorney for Plaintiff
Miroslaw Wierzbicki
1035 Route 46 East, Suite 105
Clifton, New Jersey 07013
Tel. (973) 773-9060

## CERTIFICATE OF SERVICE

We hereby certify that on September **6** , 2019, we electronically filed the foregoing Complaint with the Clerk of the Court using PACER/CM/ECF. We also certify that the foregoing document will be served on all parties either via transmission of Notices of Electronic Filing generated by PACER/CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

By: _____

Livius M. Ilasz, Esq.

5/7/2018        Video shows cops kick innocent victim of fiery crash - . . . . . . . .

| Menu | Set Weather | Subscribe |
| --- | --- | --- |
|  |  | Search |

## HUDSON COUNTY

# Video shows cops kick innocent victim of fiery crash

Updated June 8, 2017 at 10:35 AM;
Posted June 7, 2017 at 2:47 PM

16

## 1.5k
shares

**By Caitlin Mota**
The Jersey Journal

**UPDATE:** Jersey City looks to fire officers who kicked man

*Editor's note: This story has been updated to include a new comment from Hudson County Prosecutor Esther Suarez.*

JERSEY CITY - In a new video of a fiery crash that critically injured a West New York man Sunday night, police officers are seen kicking and dragging the man -- who sources say was a victim in the two-car wreck -- into the roadway.

**1** 🔔

Case 2:19-cv-17721-BRM-ESK   Document 19-1   Filed 09/06/19   Page 2 of 23 PageID: 127

video shows cops kick innocent victim of fiery crash | NJ.com

City officials said Wednesday morning they have "serious concerns" about how police handled the <u>pursuit that began sometime around 11 p.m.</u> in the Greenville section of the city and ended about six miles away with an innocent man fighting for his life.

The video, <u>obtained by Univision</u> and shared with The Jersey Journal, shows the 28-year-old man emerge from a burning car with parts of his body covered in flames. He is seen rolling on the ground to put out the flames. At the same time, more than half a dozen officers, many with their guns drawn, surround the man.

At least one cop in the video is seen forcefully kicking him in the head and neck area. Other officers are seen stomping on parts of his body.

Leo Pinkston, 48, has been <u>charged with aggravated assault and eluding</u> in the crash. Police fired multiple shots at Pinkston about a mile down the road before the crash.



"Our investigators have reviewed the video and we believe with certainty that this man is the bystander from West New York who suffered burns, not Leo Pinkston, the individual pursued by police," Hudson County Prosecutor Esther Suarez said in a statement.

A friend of the victim, who asked not to be identified out of respect for the family, said the 28-year-old was driving home from work when he tried to avoid crashing with Pinkston's speeding car.

The victim is still in the hospital "fighting for his life" with multiple broken bones and second- and third-degree burns, the friend said. The victim also has a very swollen face, which his friend said he thought was odd. After seeing the latest video, he is certain the man is his friend.

"It was just shocking," he said. "I didn't think a fire could cause that."

City spokeswoman Jennifer Morrill said the city is concerned about the way the pursuit was handled, and sources say it should have been called off at some point.

"We have serious concerns about the conduct of this pursuit, however, we are reserving judgment until the conclusion of the prosecutor's investigation," said Morrill, who declined to comment specifically on the video.

No cops have been suspended in connection with the chase, Carmine Disbrow, president of the Jersey City Police Officer's Benevolent Association, said. He criticized Public

Video shows cops kick innocent victim of fiery crash | NJ.com

Safety Director Jim Shea's decision to confiscate <u>new</u>
<u>police SUVs from the district's involved in the pursuit.</u>

"As it should be, this entire incident is being fully
investigated," said Carmine Disbrow, president of the
JCPOBA. "Taking swift action isn't always elegant, but this
video clearly shows that the officers acted quickly to
extinguish the flames, and pull this man out of harm's way."

Suarez encouraged any other witnesses with additional
footage or information on the incident to contact her office.

"I'd like to thank the individual who came forward with this
video and I'd like the public to know that we welcome their
help," Suarez said. "This video is now part of all the
evidence we are considering as we investigate the actions
of all individuals who were involved with the events of
Sunday night in Jersey City."

*Jersey Journal staff writer Michaelangelo Conte
contributed to this report.*

5/7/2018                          Four Jersey City cops suspended after chase; Video shows victim being kicked

**ON AIR NOW: DEMINSKI & DOYLE**

 LISTEN NOW

NEW JERSEY 101.5

HOME | NEWS | EVENTS | ON AIR | LISTEN | INSIDERS | CONTESTS | WEATHER | TRAFFIC | CONTACT | C

LOOK: NJ 101.5 ON ALEXA | NJ 101.5 FLASH BRIEFINGS | WEATHER | NJ 101.5 APP | GET OUR NEWSLETTER | PODCASTS | BERMUDA CRUISE | BIG JOE TALENT SHOW

TALKING ABOUT

NEW JERSEY'S BE
TO PICK 13

# FOUR JERSEY CITY COPS SUSPENDED AFTER CHASE, VIDEO SHOWS VICTIM BEING KICKED

DAN ALEXANDER

GET OUR

Email Address

🐦 SHARE ON TWITTER          f     SHARE ON FACEBOOK

LATEST POSTS

JERSEY CITY — Four Jersey City police officers have been suspended in connection with a controversial police chase that ended in a fiery crash — and with officers **seen in a video seeming to kick and drag an innocent victim of the incident.**

Jersey City Mayor Steven Fulop on Monday announced four police officers including a lieutenant have been suspended indefinitely without pay, and two deputy chiefs have been transferred.

The suspended officers were identified as Lt. Keith Ludwig, Officer M.D. Khan, Officer Erik Kosinski and Officer Francisco Rodriguez. The deputy chiefs were not identified.

 **Steven Fulop**
@StevenFulop

The actions here are fair. Not every decision is easy but we all must be accountable 4 our actions, Especially those w/public trust twitter.com/njdotcom/statu...
3:32 PM · Jun 12, 2017

18     See Steven Fulop's other Tweets



5/7/2018                                    Four Jersey City cops suspended after chase, video shows victim being kicked

Fulop and Jersey City Public Safety Director James Shea said they had concluded the officers violated several guidelines during the chase, including firing shots from their vehicle at another moving vehicle. New Jersey State Attorney General guidelines state officers should only fire at moving vehicles as a matter of last resort to protect public safety.

Authorities say Leo Pinkston led police on a chase lasting several blocks late on the evening of June 4, and was involved in at least two separate crashes over the course of the pursuit.

It ended when he crashed into a utility pole, which caused a fire that injured Miguel Feliz-Rodriguez, who was driving on Tonnelle Avenue. Hudson County Prosecutor Ester Suarez said after the crash, Feliz-Rodriguez was taken to the Burn Center at St. Barnabas Medical Center in Livingston, where he was listed as being in stable condition as of Thursday night.

Video from the incident surfaced several days later, seeming to show police kicking and dragging a bystander at the end of the pursuit.



Suarez has asked people not to rush to judgment, but promised a thorough review of the incident. She said authorities would have to "review over 15 videos containing several hours of evidence, interview more than 20 witnesses and conduct a ballistics investigation into multiple shootings."

Jersey City Mayor Steven Fulpop (David Matthau, Townsquare Media NJ)

She said after Fulop's announcement that the investigation is ongoing and results are pending.

Carmine Disbrow, president of the Jersey City Police Officer's Benevolent Association, has said he believes the video shows officers actually trying to help the man in question.

"Taking swift action isn't always elegant, but this video clearly shows that the officers acted quickly to extinguish the flames, and pull this man out of harm's way," he said last week.

Fulop previously said what he saw in the video was "unacceptable" and said "We'll pursue termination and criminal charges as appropriate.

Patrick Culligan, president of the NJ State Policemen's Benevolent Association, said of Fulop's announcement: "We don't represent the Jersey City guys, but I think it's a pretty terrible rush to judgement. I have a lot of faith in Prosecutor Suarez but I think that she could make that decision. Another rush to judgment. Disappointing that politicians feel like they should be inserting themselves into police cases. Par for the course in 2017 I guess."

Feliz underwent surgery for burns last week and remains hospitalized.

*David Matthau, Adam Hochron and the Associated Press contributed to this report.*

*Contact reporter Dan Alexander at* **Dan.Alexander@townsquaremedia.com**.

**More from New Jersey 101.5:**

Spadea   Heroic Jersey City cops under fire from Mayor Fulop

5/7/2018                              Jersey City settles police brutality lawsuit for $14,5...

**Menu**          Set Weather                                      Subscribe
                                                                           Sign In   Search

HUDSON COUNTY

# Jersey City settles police brutality lawsuit for $14,500

Posted September 6, 2016 at 10:26 AM

jcpd.JPG

Jersey
City
police
were
accused
in a
lawsuit of
assaulting
a Jersey
City man
on Nov. 1,
2012. The
city
recently
settled
the suit
for
$14,500.
*(Journal
file
photo)*

                    21                        **56**
                                              shares

By **Ron Zeitlinger**
The Jersey Journal                                                      1 🔔

Jersey City has agreed to pay a city resident $14,500 to settle a police brutality
lawsuit the man filed two years ago, court records show.

5/7/2018

In a federal lawsuit initially filed Sept. 3, 2014, Tevin Henry accused more than a dozen police officers of assaulting him after they ordered him to stop while he was riding a bicycle on Winfield Avenue at 9:30 p.m. on Nov. 1, 2012.

Henry said in his lawsuit that he dropped the bike and put his hands in the air when the police officers ordered him to stop. The lawsuit also says the police officers "pushed (Henry's) face into the ground and began hitting him with flashlights and night sticks in the face."

## TEVIN HENRY AMENDED LAWSUIT

Police also "twisted his ankles and kicked and stepped on his chest," Henry said in the lawsuit." Henry said he was handcuffed and accused of carrying a gun, but when he was searched police found only a flashlight and they smashed it, the lawsuit said.

Jersey City officials did not immediately respond to a request for comment.

The settlement, first reported by John Paff on his njcivilsettlements.blogspot.com website, was approved by the Jersey City City Council -- by a 9-0 vote -- at its Aug. 17 meeting.

The lawsuit alleged excessive force, brutality and assault and battery by police. The lawsuit also said Henry suffered "severe and grievous permanent injuries," but it did not specify the injuries.

According to federal electronic court records, the Jersey City Police Department is a defendant in 16 cases.



Registration on or use of this site constitutes acceptance of our **User Agreement** and **Privacy Policy**

© 2018 New Jersey On-Line LLC. All rights reserved (**About Us**).
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of New Jersey On-Line LLC.

**Community Rules** apply to all content you upload or otherwise submit to this site.

▷ **Ad Choices**



5/7/2018

Menu          Set Weather                                   Subscribe
                                                                Search

<u>HUDSON COUNTY</u>

# Jersey City to pay $45K to settle police brutality claim

Updated June 9, 2017 at 1:07 PM;
Posted June 9, 2017 at 11:24 AM



The Jersey City council is
scheduled to approve a $45,000
settlement to end a police
brutality lawsuit filed in 2012.
(Reena Rose Sibayan | The Jersey
Journal)

8                          **19**
                          shares

By **Terrence T. McDonald**, <u>tmcdonald@jjournal.com</u>
The Jersey Journal

<u>JERSEY CITY</u> -- A man who accused Jersey City cops of beating him during a
2011 party on Martin Luther King Drive is set to receive $45,000 to drop his
federal lawsuit against the city.

Michael Wheeler was arrested after police officers responded to the event on a
report of there being people with handguns nearby. Wheeler, who said he was
working security at the party, alleged a group of four officers grabbed him,

punched him, kneed him in the gut and hit him with a baton when he wouldn't leave the scene.

The officers said there was physical contact but argued they did not use excessive force.

Wheeler suffered a fractured skull and drifted in and out of consciousness for up to six hours while he was at the hospital following the beating, according to a March 14, 2016 decision by U.S. District Judge Madeline Cox Arleo, who allowed some of Wheeler's claims to move forward and dismissed others. Some of the incident was caught on video that gave "credence to plaintiffs' claims of excessive force," the judge said.

Wheeler and his wife initially filed the lawsuit in December 2012. The matter was set for trial in early May when both parties settled.

The City Council is scheduled to approve the $45,000 settlement on Wednesday.

ADVERTISING

Learn more



This week the city's police force faced new accusations of police brutality following a six-mile pursuit Sunday night that ended in a car crash on Tonnelle Avenue.

A video surfaced Tuesday showing police officers kicking a man who had climbed out of a burning car. The man turned out not to be Leo Pinkston, the man police say led them on the chase, but Miguel Feliz, a West New York man whose car Pinkston is accused of crashing into at the end of the pursuit.

Feliz remains hospitalized in stable condition.

*Terrence T. McDonald may be reached at tmcdonald@jjournal.com. Follow him on Twitter @terrencemcd. Find The Jersey Journal on Facebook.*

5/14/2018

**JERSEY JOURNAL PRINT EDITION**

# Brutality lawsuit against Jersey City police, tavern moving forward

Updated Jul 17, 2017;
Posted Jul 15, 2017



Hector Mejias, 36, of Jersey City.
Photo taken on September 30,
2012. Michael Dempsey | The
Jersey Journal

4

**72**
shares

By **Caitlin Mota**
The Jersey Journal

The Jersey City Police Department and a former mayor's son are at the center of a multi-million dollar police brutality lawsuit that alleges a man was beaten so viciously he suffered permanent brain damage.

The allegations stem from a 2012 assault outside Healy's Tavern on Newark Avenue involving off-duty police officers and the bar's owner, Jeremiah S. Healy, [1] a Jersey City firefighter and son of then-Mayor Jerramiah Healy.

Hector Mejias is seeking damages for pain, suffering and emotional distress for the Sept. 29 incident.

5/14/2018

Motions to dismiss the lawsuit were denied by an Essex County Superior Court judge in June. The case was transferred out of Hudson County because at least one person listed in the complaint has a relative working in the Hudson courthouse. The next hearing in the case is Aug. 14.

According to the lawsuit, Mejias was driving home when he saw a group near the bar beating another man in the middle of the street. Mejias told the attackers to stop beating up the victim and said he was going to call the police, the lawsuit says. When he took out his phone, the men doing the beating said they were cops.

Those officers, who were off-duty and are identified in the lawsuit as detectives Chris Heger and Mark D'Ambrosio, appeared "highly intoxicated" and approached Mejias, the suit says.

In the lawsuit Mejias says he went back to his car, but Healy Jr. tried to stop him from driving away. Mejias later bit three of Healy's fingers in self-defense, the lawsuit said.

Heger and D'Ambrosio ripped Mejias from the vehicle and continued to "beat him and kick him violently," the lawsuit indicates.

Mejias was brought to the hospital for treatment and was then arrested on assault charges. Officials said a grand jury declined to indict Mejias in April 2013.

Authorities, however, painted a different picture of the incident in 2012. Police reports indicated Mejias hit the off-duty officers while he was trying to defend his friend, who was being subdued by the detectives. Healy tried to take Mejias' keys so he couldn't get away from the officers, police said.

Those reports were not accurate and were intentionally "misleading" to "cover up the actions" of Heger, D'Ambrosio and Healy, who lied to the on-duty cops who responded to the fight, the lawsuit claims.

5/14/2018

The on-duty officers involved in the alleged cover-up are Stephen Wilson, Samantha Pescatore and Sgt. Timothy Ackerley, the lawsuit said. Those officers were not involved in the physical altercation, according to the filings.

Mejias, meanwhile, is permanently disabled because of his injuries. The lawsuit says he suffered a concussion and has developed a seizure disorder. His eye socket was severely damaged and he cannot return to his job as a truck driver, the filings state.

The lawsuit also wants Healy's Tavern held accountable for allegedly serving alcohol to Heger and D'Ambrosio, who were already drunk. Judy Taboada, the attorney representing the tavern and Healy, did not return a call seeking comments on the lawsuit.

Jersey City spokeswoman Jennifer Morrill declined to comment on the case, but did stress the "all events precede (Mayor Steve Fulop's) administration."

Mejias' attorney Mario Blanch declined to discuss the specifics of the lawsuit, but said the "actions of the Jersey City Police Department were aggressive and heinous" and Mejias is looking forward to his day in court.

While the West New York attorney could not discuss how much money Mejias is seeking, filings indicate the lawsuit will not exceed $10 million.

Last month, the City Council approved a $45,000 settlement for a 2011 beating outside a house party. That settlement came as the department faces new allegations of police brutality after video surfaced of officers kicking an innocent man in the face after a police pursuit ended in a fiery crash.

*Caitlin Mota may be reached at cmota@jjournal.com. Follow her on Twitter @caitlin_mota-- .*

5/14/2018

Registration on or use of this site constitutes acceptance of our **User Agreement** and **Privacy Policy**

© 2018 New Jersey On-Line LLC. All rights reserved (**About Us**).
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of New Jersey On-Line LLC.

**Community Rules** apply to all content you upload or otherwise submit to this site.

▷ **Ad Choices**

5/14/2018

HUDSON COUNTY

# $25K settlement to end case of alleged police brutality in Jersey City

Updated Apr 23;
Posted Apr 23



The council is expected to approve the settlement on April 25. (Reena Rose Sibayan | The Jersey Journal)

8          **20**
shares

By **Terrence T. McDonald**, tmcdonald@jjournal.com
The Jersey Journal

JERSEY CITY — The City Council this week is scheduled to approve a $25,000 settlement for a man who alleges cops attacked him and falsely charged him with crimes outside the Salem Lafayette housing complex two years ago.

Jeremy Rennick sued Jersey City, its police department and four officers in federal court last year, claiming the March 19, 2016 arrest violated his civil rights. His attorneys and a city spokeswoman declined to comment on the

1 🔔

5/14/2018

settlement proposal, which is up for council approval on Wednesday night.

Rennick's six-count lawsuit offers a drastically different version of events than the one described by authorities after his arrest.

Cops accused Rennick of punching one officer and dragging a second one with his car before being taken into custody. He was charged with aggravated assault on a police officer, eluding police and resisting arrest.

The lawsuit says surveillance video showed the cops' accounts to be untrue. Officers Humberto Balbosa and Kevin Geib ambushed Rennick and launched a "violent, unprovoked" attack after he stepped out of his car, according to the lawsuit.

A spokesman for the Hudson County Prosecutor's Office said the charges against Rennick were dismissed in October 2016. By that point, Rennick had already spent six months behind bars, according to his lawsuit.

Rennick also named Sgt. Thomas Broderick and Officer Chris Koszyk as defendants. A request for comment from the spokesman for Jersey City's police unions was not returned.

*Terrence T. McDonald may be reached at tmcdonald@jjournal.com. Follow him on Twitter @terrencemcd. Find The Jersey Journal on Facebook.*





Registration on or use of this site constitutes acceptance of our **User Agreement** and **Privacy Policy**

© 2018 New Jersey On-Line LLC. All rights reserved (**About Us**).
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of New Jersey On-Line LLC.

5/14/2018

▶ WATCH NEWS 12 NOW

Advertisement

Log In    Change Region

WEATHER    TOP STORIES    TRAFFIC    CRIME    FOOD & FUN    SLIDESHOWS

# Jersey City man alleges police brutality in home

A Jersey City man says he believed he was becoming the victim of a home invasion, but the real trouble began when police arrived.

Mathias Bolton, 34, is accusing Jersey City police officers of brutality. He says plainclothes officers answered his 911 call and never identified themselves. He says they pushed him around and yelled at him.

Bolton says he fought back and ended up with bruises, open sores, a twisted ankle and cracked ribs.

He says uniformed officers arrived soon after and started beating him up as well.

Jersey City police and the mayor's office say they are standing by the police report filed by two of the officers, which says they identified themselves and that Bolton started the struggle.

Bolton was charged with aggravated assault on a police officer and resisting arrest. The charges were later downgraded. An internal investigation into the incident is under way.

HOME    WEATHER    TOP STORIES    TRAFFIC    CRIME    FOOD & FUN    SLIDESHOWS

**FOLLOW US**
Join Us On Facebook
Join Us On Twitter
Get our Apps
Go to Mobile Website
Sign Up for Our Newsletters

**OUR NETWORK**
Optimum
Newsday
News 12 Varsity
Newsday Cars
Newsday Homes

**HELPFUL LINKS**
Careers
Internships
Advertise
RSS
About Us
News Tips
Send Us Photos/Video
Newscasts

**MORE LINKS**
Site Map
Feedback
Terms of Service
Privacy Policy

All content © 2001 - 2018 Frankly and NEWS12. All Rights Reserved. For more information on this site, please read our **Privacy Policy**, **Terms of Service**, and **Ad Choices**.

Menu          Set
              Weather                          Subscribe

                                                          Sign In    Search

NEWS

# Jersey City might not be reporting every time a cop uses force

Updated Jan 8, 2019;
Posted Dec 10, 2018

Everything you need to know about The Force Report



Everything you need to know about The Force Report

Comment                                    77
                                           shares

By Blake Nelson | NJ Advance Media for NJ.com

Case 2:19-cv-17721-BRM-SCM Document 1-1 Filed 09/06/19 Page 35 of 43 PageID: 246

*The Force Report is a continuing investigation of police use of force in New Jersey. Read more from the series or search your local police department and officers in the full the database.*

**Note**: *After publication, Jersey City officials turned over 70 forms they found after the original records request. See Jersey City's updated use-of-force numbers here.*



Nutrisystem®

*Discover*
CHEF-CREATED WEIGHT LOSS

SAVE $125

SHOP NOW ▸

serving suggestion

The Jersey City police chief has conceded it is possible his officers are using more force when making arrests than publicly reported, and he is pledging new training to ensure all incidents in New Jersey's second-largest city are documented.

The action comes in response to inquiries from NJ Advance Media as part of The Force Report, a 16-month investigation into New Jersey's broken system for tracking the greatest authority granted police officers.

While the state Attorney General's Office requires officers to report every use of force, no matter the severity, the investigation found widespread inconsistencies among local departments. Jersey City stood out as a potential anomaly.

According to reports provided by the city, officers used force in about 1.5 percent of all arrests, less than half the statewide average and significantly less than cities of similar populations (such as Newark and Elizabeth) and violent crime rates (such as Burlington City and Neptune Township).

Nutrisystem®


Maria Haberfeld, a police science professor at the John Jay College of Criminal Justice in New York, said Jersey City's rate was likely wrong.

"Given the nature of crime there and the size of the department," she said, the current rate was "very low and surprising."

When asked about the numbers, James Shea, the city's public safety director, initially said some forms were missing, though at the time he did not know how many, where they were or if they existed. (Shea oversees several public safety agencies, including the police and fire departments.)

After a multi-week internal investigation, the police department located dozens of reports that were missing from internal affairs files and had not been provided to the news organization to comply with its public records request, protected by state laws. It still has not turned over the forms.

For example, no report was turned over for an incident involving Hector Mejias, who said in a lawsuit he was inappropriately hit and kicked by Jersey City officers in 2012. The same goes for Tevin Henry, who settled a police brutality lawsuit with the city for $14,500. And then there was a 2016 incident involving Jeremy Rennick, who recently settled assault claims for $25,000.

Case 2:19-cv-17721-BRM-ESK   Document 1-1   Filed 09/06/19   Page 21 of 24 PageID: 36



Shea said use-of-force reports did exist for Mejias and would be turned over. But he disputed whether officers had used force at all with Henry, and he said Rennick's arrest fell into the gray area where "physical contact" ended and "physical force" began.

Even with the newly located reports, Jersey City's rate of force would hardly budge. Police Chief Michael Kelly said "a low number is possible in Jersey City" and called it a sign the city's officers used restraint and de-escalated situations.

The rate is especially striking for a city known for its aggressive street crime unit, which sometimes floods violent areas with officers on the lookout for problems.

Current and former Jersey City officers varied when asked how well force had been recorded. Some said use-of-force forms were filled out appropriately; others said they were sometimes ignored. One former officer laughed aloud when told of the department's numbers.

Robert Cowan, who was chief of the department from the end of 2013 through part of 2014, said the rate seemed low but not impossible.

"In my view, the issue is laziness, rather than a conscious effort to cover something up," Cowan said. "There's so much paperwork, there's always another form you gotta fill out."

 **Listen to NJ.com on Alexa, on Google Home, or via a daily podcast**

Ensuring local departments are reporting force as required falls to county prosecutors. Under the current attorney general rules, local police departments are required to submit annual reports about "all situations involving the use of physical, mechanical or deadly force" to their respective county prosecutors. The intention is for prosecutors to provide a layer of oversight and flag officers or departments that may need intervention or more training.

But in Hudson County, which oversees Jersey City, that didn't happen for years, Kelly said. Only late last year — after widespread public records requests across the state by NJ Advance Media for police use-of-force forms — did the prosecutor's office change course and require statistics to be filed quarterly.

Representatives for the county prosecutor's office and Mayor Steven Fulop did not return requests for comment.

Kelly said the city's police department uses an internal warning system to flag officers who frequently use force, and he said the 188 excessive force complaints the department faced from 2012 through 2016 was a relatively low number. He also said a new computerized reporting system will make it easier to track force going forward.

But he said it's possible his officers aren't properly reporting some physical restraints, which is the most common type of force across the state. In response to NJ Advance Media's investigation, he promised additional training for all officers beginning early next year.

Part of the problem, he said, was that the attorney general's original directive wasn't clear on how force should be tracked.

"It wasn't explained, exactly, where these forms had to go," he said. "And it's still not."

**Read more from The Force Report:**

- How N.J.'s system for stopping potentially abusive cops broke down
- Search your town and local police officers to see how much force they use
- They claimed they were victims of police brutality. Read their stories.
- Everything you need to know about how police use force, from A-Z
- See how often police in every N.J. town punch, kick or use other force (MAP)
- Frequently Asked Questions about The Force Report
- How we built the largest database of police force in N.J. history

*NJ Advance Media staff writer Stephen Stirling contributed to this report.*

View Comments

Note to readers: if you purchase something through one of our affiliate links we may earn a commission.



Registration on or use of this site constitutes acceptance of our **User Agreement** and **Privacy Policy**

© 2019 New Jersey On-Line LLC. All rights reserved (**About Us**).

The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of New Jersey On-Line LLC.

**Community Rules** apply to all content you upload or otherwise submit to this site.

▷ **Ad Choices**

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

| | |
|---|---|
| MIROSLAW WIERZBICKI | ) |
| | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. |
| CITY OF JERSEY CITY, JERSEY CITY POLICE | ) |
| DEPARTMENT and JOHN DOES 1 and 2, | ) |
| | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* CITY OF JERSEY CITY, 280 Grove Street, Jersey City, NJ 07302
JERSEY CITY POLICE DEPARTMENT, 1 Journal Square Plaza, Division of
Police, 4th Floor, Jersey City, NJ 07306

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: ILASZ & ASSOCIATES, 1035 Route 46 East, Suite 105, Clifton, New Jersey 07013

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

## CERTIFICATE OF SERVICE

We hereby certify that on September **6** , 2019, we electronically filed the foregoing Complaint with the Clerk of the Court using PACER/CM/ECF. We also certify that the foregoing document will be served on all parties either via transmission of Notices of Electronic Filing generated by PACER/CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

By: _____

Livius M. Ilasz, Esq.

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Miroslaw Wierzbicki | City of Jersey City, Jersey City Police Department, John Does 1 and 2 |

**(b)** County of Residence of First Listed Plaintiff    Queens County NY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Hudson County NJ
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
ILASZ & ASSOCIATES 1035 Route 46 East, Suite 105
Clifton, New Jersey 07013 P: (973) 773-9060

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability   ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel &   Pharmaceutical Slander   Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability   ☐ 368 Asbestos Personal ☐ 340 Marine   Injury Product ☐ 345 Marine Product   Liability | | ☐ 835 Patent - Abbreviated New Drug Application ☐ 840 Trademark | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | Liability   **PERSONAL PROPERTY** ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability   ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal   Property Damage | Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury   ☐ 385 Property Damage ☐ 362 Personal Injury -   Product Liability | ☐ 740 Railway Labor Act ☐ 751 Family and Medical | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts ☐ 893 Environmental Matters |
| | Medical Malpractice | Leave Act ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights   **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate | | 26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/   Sentence | | | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations   ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 535 Death Penalty Employment   **Other:** | **IMMIGRATION** | | |
| | ☐ 446 Amer. w/Disabilities -   ☐ 540 Mandamus & Other Other   ☐ 550 Civil Rights | ☐ 462 Naturalization Application ☐ 465 Other Immigration | | |
| | ☐ 448 Education   ☐ 555 Prison Condition ☐ 560 Civil Detainee -   Conditions of   Confinement | Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1981, 1983, 1985, 1986
Brief description of cause:
Excessive force, unreasonable seizure, personal injuries

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE          DOCKET NUMBER

DATE
September 6, 2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG. JUDGE