**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MIROSLAW WIERZBICKI, | |
| Plaintiff, | |
| v. | Case No. 2:19-cv-17721 (BRM) (ESK) |
| CITY OF JERSEY CITY, *et al.*, | |
| Defendants. | **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendants City of Jersey City ("JC"), Jersey City Police Department ("JCPD"), Ameer Alateek ("Alateek"), Humberto Portuondo ("Portuondo"), and Joseph Larkins ("Larkins") (collectively, "Defendants") seeking to dismiss Plaintiff Miroslaw Wierzbicki's ("Wierzbicki") Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 40.) Wierzbicki opposed the motion. (ECF No. 41.) Defendants replied. (ECF No. 42.) Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part**.

I.      **BACKGROUND**

For the purposes of this Motion to Dismiss, the Court "accept[s] as true all factual allegations in the [Second Amended Complaint] and draw all inferences from the facts alleged in the light most favorable to" Wierzbicki. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). Furthermore,

the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

The factual details of this dispute are explained in this Court's Opinion dated May 7, 2021 (the "May Opinion") (ECF No. 15),[1] which the Court incorporates by reference. The dispute stems from an alleged incident that occurred on September 8, 2017, at around 12 pm (the "Incident"), in which several police officers injured Wierzbicki, who was riding his bicycle on Martin Luther King Boulevard in Jersey City, New Jersey. (*Id*. at 2.) The May Opinion dismissed Wierzbicki's original Complaint without prejudice. (*Id*. at 1.)

On January 26, 2021, Wierzbicki filed the Second Amended Complaint, asserting claims under: (1) 42 U.S.C. § 1983 against Jersey City Police Officers Alateek, Portuondo, and Larkins (collectively, the "Officer Defendants") in Count I, against JC in Count II, and against JCPD in Count III; (2) 42 U.S.C. § 1985 in Count IV;[2] (3) 42 U.S.C. § 1986 in Count V; (4) the New Jersey Constitution and the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-1 *et seq.*,

---

[1] *Wierzbicki v. City of Jersey City*, No. 19-17721, 2020 U.S. Dist. LEXIS 80421 (D.N.J. May 7, 2020).

[2] Wierzbicki bases his § 1985 claim on Defendants' alleged "conspiracy to violate the civil rights of [Wierzbicki] based on his race, ethnicity, national origin, or other unlawful basis." (ECF No. 34 ¶ 75.) Therefore, the Court construes this claim as brought under § 1985(3), which "applies only to discrimination based on 'characteristics—*i.e.* race, national origin or gender—which are traditionally part and parcel of discrete and insular minorities.'" *Biase v. Kaplan*, 852 F. Supp. 268, 290 (D.N.J. 1994) (quoting *Hicks v. Resolution Tr. Corp.*, 970 F.2d 378, 382 (7th Cir. 1992)). The other two subsections of § 1985 do not apply here. "Section 1985(1) prohibits preventing an officer of the United States from performing official duties." *Reid v. Schuster*, Civ. A. No. 05-3838, 2008 U.S. Dist. LEXIS 22113, 27 n.12 (D.N.J. Mar. 18, 2008). Section 1985(2) "applies only to conspiracies to prevent witnesses from appearing in federal courts." *Voth v. Hoffman*, Civ. A. No. 14-7582, 2016 U.S. Dist. LEXIS 57289, at *29 (D.N.J. Apr. 28, 2016) (quoting *Grant v. Abbott House*, Civ. A. No. 14-8703, 2016 U.S. Dist. LEXIS 21195, at *16 (S.D.N.Y. Feb. 22, 2016)).

against all Defendants in Count VI and against JC in Count VII; (5) New Jersey common law for assault and battery in Count VIII; (6) New Jersey common law for intentional infliction of emotional distress in Count IX; and (7) New Jersey common law for negligent hiring, supervision, and retention against JC and JCPD in Count X. (ECF No. 34.) On April 28, 2021, Defendants filed a Motion to Dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 40.) Wierzbicki opposed the motion (ECF No. 41), and Defendants replied (ECF No. 42).

## II.   LEGAL STANDARD

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286 (citations omitted). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp 235–36 (3d ed. 2004)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a

probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "further factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286 (citations omitted).

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss to a summary judgment motion, including items that are *integral to or explicitly relied upon* in the complaint." *Coulter v. Doerr*, 486 F. App'x 227, 228 (3d Cir. 2012) (citing *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)).

## III.   DECISION

As a threshold matter, the Court finds a separate analysis for some of Wierzbicki's state claims could be unnecessary. First, the NJCRA "mirrors § 1983 and 'creates a private cause of action for violations of civil rights secured under the New Jersey Constitution.'" *Conte v. Goodwin*,

Civ. A. No. 19-8333, 2021 U.S. Dist. LEXIS 8618, at *29 (D.N.J. Jan. 15, 2021) (citations omitted). "The analysis under § 1983 for alleged violations of the United States Constitution is the same as the analysis under the NJCRA for alleged violations of the New Jersey Constitution." *Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 747 (D.N.J. 2016) (citations omitted). Therefore, "the Court's analysis on the § 1983 claims applies to plaintiff's claims under the NJCRA." *Monroe v. City of Hoboken*, Civ. A. No. 11-2556, 2012 U.S. Dist. LEXIS 50096, at *31 (D.N.J. Apr. 10, 2012). Second, "because [§] 1986 is expressly conditioned upon the existence of a [§] 1985 conspiracy which is about to occur," "[t]he failure to establish any right to relief under 42 U.S.C. § 1985 justifies the dismissal of the dependent cause of action under 42 U.S.C. § 1986." *Perry v. Bernardin*, Civ. A. No. 04-6102, 2005 U.S. Dist. LEXIS 18115, at *20 (D.N.J. Aug. 18, 2005) (citations omitted). Third, a "plaintiff's claims under 42 U.S.C. §§ 1985(3) and 1986 depend on the success of [his] claim under [§] 1983." *Reynolds v. Atl. City Convention Ctr. Auth.*, Civ. A. No. 88-4232, 1990 U.S. Dist. LEXIS 17016, at *57–58 (D.N.J. May 21, 1990); *see also Nanya-Nashut ex rel. Hand v. Centex Home Equity Corp.*, Civ. A. No. 03-3661, 2003 U.S. Dist. LEXIS 25174, at *7 (E.D. Pa. Dec. 1, 2003) ("[T]he absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations. . . . Without a properly pled claim under § 1985, a plaintiff cannot bring a § 1986 claim." (citations omitted)). Therefore, if Wierzbicki's § 1983 claim against a Defendant is inviable, his § 1985, § 1986, and NJCRA claims against that Defendant must also fail. Moreover, if Wierzbicki's § 1985 claim against a Defendant is inviable, his § 1986 claim against that Defendant must also fail.

A.     **Wierzbicki's Claims Against JCPD Are Inviable**

Defendants maintain JCPD has no independent existence as an entity that can sue or be sued. (ECF No. 40-1 at 23.) Defendants argue JCPD must be dismissed as a defendant, because a

suit against the police department should be regarded as a suit against JC. (*Id.*) The Court agrees.

"A police department, and similarly a unit within a police department, are not proper parties to a § 1983 action because they are merely sub-units of government that are not distinct from the municipality of which they are a part." *McIntosh v. Atl. City Police Dep't*, Civ. A. No. 19-9889, 2019 U.S. Dist. LEXIS 175938, at *4–5 (D.N.J. Oct. 10, 2019) (citing *Jackson v. City of Erie Police Dep't*, 570 F. App'x 112, 114 n.2 (3d Cir. 2014)); *see also McGovern v. City of Jersey City*, Civ. A. No. 98-5186, 2005 U.S. Dist. LEXIS 38644, at *23 n.4 (D.N.J. Dec. 29, 2005) ("In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." (quoting *DeBellis v. Kulp*, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001))). Here, JC is already a Defendant for Wierzbicki's § 1983, § 1985, § 1986, and NJCRA claims. Therefore, as a matter of law, Wierzbicki should not separately assert such claims against JCPD. Accordingly, Counts IV, V, VI, VIII, IX, and X against JCPD, as well as Count III will be dismissed with prejudice, and no leave to amend is warranted. *Berroa v. United States*, Civ. A. No. 13-4789, 2018 U.S. Dist. LEXIS 109038, at *3 (D.N.J. June 29, 2018) (citing *Ryan v. Collucio*, 183 F.R.D. 420, 423 (D.N.J. 1998)) ("If the causes of action in the proposed amended complaint fail as a matter of law, leave to amend should be denied as futile.").

### B.    Wierzbicki's Claims Against JC Are Inviable

#### 1.    The § 1983, § 1985, § 1986, and NJCRA Claims

Defendants maintain Wierzbicki's claims against JC can only survive on a *Monell* theory of liability: a municipality cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior, unless its policy or custom is unconstitutional or is the moving force behind the constitutional violation of its employees. (ECF No. 40-1 at 12–13 (citing *Monell v.*

*N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).) Defendants argue Wierzbicki's allegations that JC's policy, custom or practice caused the underlying violations are conclusory and lack the necessary factual support. (*Id.* at 14.) Wierzbicki insists he has sufficiently alleged facts regarding JC's policies or customs exhibiting deliberate indifference to the constitutional rights of individuals. (ECF No. 41 at 14.) Wierzbicki claims the relevant factual information, which is in JC's control, could have been revealed by his Open Public Records Act ("OPRA") request. (*Id.* at 13–14.) Wierzbicki suggests the production of information from the OPRA request was deficient, which demonstrates the need for meaningful discovery to reveal facts concerning JC's policies or customs. (*Id.*) The Court disagrees.

The May Opinion already held *Monell* requires Wierzbicki to "allege a policy, custom, or practice which causes the underlying constitutional violations," for his § 1983, § 1985, § 1986, and NJCRA claims against JC. (ECF No. 15 at 4–5.) The May Opinion found Wierzbicki's original Complaint failed to sufficiently allege a policy, custom, or practice of JC under *Monell*, because its "allegations [we]re completely conclusory." (*Id.* at 5.) Compared with the Complaint, the Second Amended Complaint does not allege any new facts regarding JC's policies, customs, or practices. (*See* ECF No. 1 ¶¶ 29–36; ECF No. 34 ¶¶ 41–49.) Therefore, the Court has no reason to find the Second Amended Complaint satisfies *Monell*.

As for the OPRA request, Wierzbicki does not argue it has produced any information regarding JC's policy, custom, or practice. Wierzbicki only indicates the request failed to produce certain information that he had expected (ECF No. 41 at 13–14), but this does not constitute positive evidence of JC's policy, custom, or practice. Also, Wierzbicki does not point to any error in the OPRA process that would make the information it produced unreliable. Therefore, the alleged deficient production in response to Wierzbicki's OPRA request could only weaken

Wierzbicki's position, because the absence of a record of a regularly conducted activity may be "admitted to prove that the matter did not occur or exist" when "the opponent does not show that the possible source of the information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(7).

Accordingly, the Court finds Wierzbicki again fails to sufficiently allege an actionable policy, custom, or practice of JC under *Monell*. As a result, Counts IV, V, and VI against JC, as well as Count II, will be dismissed with prejudice, and no leave to amend is warranted. *See TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, Civ. A. No. 12-3355, 2014 U.S. Dist. LEXIS 107756, at *25 (D.N.J. Aug. 5, 2014) ("[T]he [c]ourt has already afforded [the plaintiff] the opportunity to amend its [complaint], yet the [a]mended [complaint] suffer[s] from many of the same pleading deficiencies previously identified by the [c]ourt in the [earlier] [o]pinion. Accordingly, the [c]ourt declines to allow [the plaintiff] to amend a second time.").

### 2. The Intentional Tort Claims

Defendants contend Wierzbicki's intentional tort claims in Counts VIII and IX should be dismissed as to JC, because a public entity cannot be held liable under a theory of respondeat superior for the intentional conduct of its employees, which is outside the scope of their employment. (ECF No. 40-1 at 16, 18.) Wierzbicki argues, under N.J. Stat. Ann. § 59:2-2(a), JC can be found liable for its employees' conduct that falls within the scope of their employment, based on a theory of respondeat superior. (ECF No. 41 at 15–16.) Wierzbicki states the Officer Defendants were acting within the scope of their employment in the Incident. (*Id*. at 17.) The Court disagrees.

"A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a

private individual under like circumstances." N.J. Stat. Ann. § 59:2-2(a). "However, an exception exists for public entities where the act or omission of the employee constitutes 'a crime, actual fraud, actual malice, or willful misconduct.'" *Hickman v. Freehold Borough*, Civ. A. No. 15-3578, 2017 U.S. Dist. LEXIS 48565, at *45 (D.N.J. Mar. 31, 2017) (quoting N.J. Stat. Ann. § 59:2-10); *see also Cruz v. N.J. Dep't of Corr.*, Civ. A. No. 15-8813, 2016 U.S. Dist. LEXIS 61437, at *3 (D.N.J. May 9, 2016) (recognizing § 59:2-10 as "an exception" to "the general concept of vicarious liability" adopted in § 59:2-2(a) (quoting *Hoag v. Brown*, 935 A.2d 1218, 1230 (N.J. Super. Ct. App. Div. 2007))). "[T]his § 59:2-10 immunity applies to intentional torts." *Abdallah v. City of Paterson*, Civ. A. No. 16-4660, 2017 U.S. Dist. LEXIS 82135, at *14 (D.N.J. May 26, 2017) (citing *Hoag*, 935 A.2d at 1230); *see also Lozano v. New Jersey*, Civ. A. No. 17-6581, 2020 U.S. Dist. LEXIS 115320, at *36 n.14 (D.N.J. June 29, 2020) ("A long line of cases is in accord as to the dismissal of respondeat superior claims against municipalities based on their employees' commission of intentional torts." (citations omitted)). Therefore, even if an employee committed an intentional tort within the scope of his or her employment, the municipal employer should not be held vicariously liable. *See Conte*, 2021 U.S. Dist. LEXIS 8618, at *29 (finding that the municipal defendants "cannot be liable for [their employees'] actions" if the employees "were acting with 'actual fraud, actual malice, or willful misconduct,'" even though such "actions were within the scope of their employment").

Here, Wierzbicki asserts claims against JC for assault and battery in Count VIII and intentional infliction of emotional distress in Count XI. It is undisputed that these are claims for intentional torts. Therefore, Counts VIII and IX against JC are inviable as a matter of law and warrant dismissal with prejudice. *See* Part III.A, *supra*.

### 3.    The Negligent Hiring, Supervision, and Retention Claim

Wierzbicki maintains the alleged actions taken by the Officer Defendants were so shocking and egregious in nature that they are indicative of the Officer Defendants' propensity for violent outbursts, which may have been discovered had JC properly supervised the Officer Defendants. (ECF No. 41 at 22.) Wierzbicki claims he is entitled to discovery so that he may produce evidence that JC negligently hired, supervised, and retained the Officer Defendants. (*Id*.) The Court disagrees.

Under New Jersey law, "a municipality may be held liable for its negligence in hiring or retaining an officer it knows to have dangerous propensities." *Shabazz v. N.B. Police Dep't*, Civ. A. No. 13-1975, 2014 U.S. Dist. LEXIS 88157, at *57 (D.N.J. June 27, 2014) (citing *Denis v. City of Newark*, 704 A.2d 1003, 1007–08 (N.J. Super. Ct. App. Div. 1998)). "[T]he tort of negligent hiring has as its constituent elements two fundamental requirements." *Di Cosala v. Kay*, 450 A.2d 508, 516 (N.J. 1982). "The first involves the knowledge of the employer and foreseeability of harm to third persons." *Id*.

> An employer will only be held responsible for the torts of its employees beyond the scope of the employment where it knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons.

*Id*. (citations omitted). "The second required showing is that, through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness or dangerous characteristics proximately caused the injury." *Id*. (citing *Hathcock v. Mitchell*, 173 So.2d 576, 584 (Ala. 1965)). "To be found liable for negligent supervision or training, the plaintiff must satisfy what is essentially the same standard, but framed in terms of supervision or training." *G.A.-H. v. K.G.G.*, 210 A.3d 907, 916 (N.J. 2019) (citing *id.*).

Therefore, for JC's alleged negligence in hiring, retaining, or supervising the Officer

Defendants to be actionable, it must have caused Wierzbicki's injuries in the Incident. Also, JC's actual or constructive knowledge of the Officer Defendants' dangerous propensities, if any, are relevant in that it allows JC to foresee the risk of harm to Wierzbicki. *See Di Cosala*, 450 A.2d at 518 ("[T]he question presented is whether the employer, knowing of its employee's unfitness, incompetence or dangerous attributes when it hired or retained its employee, should have reasonably foreseen the likelihood that the employee through his employment would . . . create a risk of danger to [the public] because of the employee's qualities."). In other words, Wierzbicki must show JC's negligence and actual or constructive knowledge occurred *before* the Incident. *See Denis*, 704 A.2d at 1007–08 (finding that the municipal defendant "knew or should have known of [the police officer's] dangerous propensities," because the police officer's "personnel file" recorded two incidents where he "was disciplined for assaultive behavior on defenseless citizens" that "predated the assault in this case" and nine instances where he was "suspended . . . for violating police regulations between 1985 and 1995"). Importantly, JC's alleged negligence or knowledge cannot be based on what happened in the Incident. After all, "[f]oresight, not hindsight, is the standard by which one's duty of care is to be judged." *Lingar v. Live-In Companions, Inc.*, 692 A.2d 61, 65 (N.J. Super. Ct. App. Div. 1997) (citations omitted). Because the Second Amended Complaint alleges no facts that suggest JC had actual or constructive knowledge of the Officer Defendants' dangerous propensities before the Incident, Wierzbicki's claim for negligent hiring, supervision, and retention is inviable.

Even if Wierzbicki invokes *res ipsa loquitur* to establish JC's negligence, his factual allegations are insufficient. "*Res ipsa loquitur* is a doctrine fashioned for limited application in special situations." *Smallwood v. Mitchell*, 624 A.2d 623, 625 (N.J. Super. Ct. App. Div. 1993) (citing *Good-year Tire & Rubber v. Hughes Supply, Inc.*, 358 So.2d 1339, 1341 (Fla. 1978)). "The

doctrine of *res ipsa loquitur* applies when it is reasonable to say that, under the circumstances, the injury to the plaintiff would not have occurred in the absence of the defendant's negligence." *Sanzari v. Rosenfeld*, 167 A.2d 625, 631 (N.J. 1961) (citations omitted). "In *res ipsa* cases, [the] plaintiff need only prove his injury, and need not prove a standard of care or a specific act or omission." *Id*. "To assert *res ipsa loquitur*, [the plaintiff] must plead that: (1) the occurrence itself ordinarily bespeaks negligence; (2) the instrumentality was within [the defendant's] exclusive control; and (3) there is no indication that the injury was the result of [p]laintiff's own voluntary act or negligence." *Geiss v. Target Corp.*, Civ. A. No. 09-2208, 2011 U.S. Dist. LEXIS 84710, at *11 n.3 (D.N.J. Aug. 2, 2011) (citing *Buckelew v. Grossbard*, 435 A.2d 1150, 1159 (N.J. 1981)). Here, Wierzbicki only asserts the Officer Defendants' "dangerous attribute *may* have been discovered had [JC or JCPD] properly supervised [the Officer] Defendants." (ECF No. 41 at 22 (emphasis added).) Even if the Incident represents a special situation where the *res ipsa loquitur* doctrine is applicable, Wierzbicki's assertion is insufficient for triggering the doctrine, because he fails to indicate the Officer Defendants' accused actions in the Incident and the like *ordinarily* bespeak negligence on JC's part. Therefore, Count X against JC warrants dismissal.

Nevertheless, the dismissal is without prejudice. Wierzbicki's claim for negligent hiring, supervision, and retention in the Seconded Amended Complaint is brought under New Jersey common law. It was not addressed in the May Opinion, where Wierzbicki's only negligence claim was brought under § 1983. (ECF No. 1 ¶¶ 57–59.) The May Opinion dismissed the § 1983 negligence claim for failing to adequately allege a policy, practice, or custom under *Monell*. (ECF No. 15 at 5.) Here, Wierzbicki's common law negligence claim is not governed by *Monell* and is dismissed for different reasons of pleading deficiency. As a result, the Court grants Wierzbicki an opportunity to amend Count X.

###### 4.    Count VII Is Duplicative of Count VI and Dismissed with Prejudice

Wierzbicki's Count VII is brought under the same laws and based on the same factual allegations as Count VI; the only difference between the two counts is that Count VII is asserted against JC, while Count VI is asserted against all Defendants. (*See* ECF No. 34 ¶¶ 81–87.) In other words, the resolution of Count VII requires no separate analysis from Count VI, and Count VII is not an independent cause of action but rather duplicative of Count VI. Therefore, Count VII will be dismissed with prejudice. *See Walker v. City of Newark*, Civ. A. No. 19-16853, 2020 U.S. Dist. LEXIS 115437, at *29 (D.N.J. July 1, 2020) (dismissing the portions of a count that "would duplicate [another two counts] and would be subject to the same analysis"); *Davis v. Yates*, Civ. A. No. 15-6943, 2020 U.S. Dist. LEXIS 17758, at *34 (D.N.J. Feb. 3, 2020) ("Since there is no independent cause of action for 'abuse of power,' and the claim is premised upon the same allegations and constitutional deprivations underlying Count I, I will dismiss Count II as redundant." (citing *Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 132 (D.N.J. 2017))).

#### C.    Some of Wierzbicki's Claims Against the Officer Defendants Are Inviable

Wierzbicki identifies three officers at the scene and on the date of the Incident: two officers, Alateek and Portuondo, were the first to appear; the third one, Larkins, arrived after Alateek and Portuondo. (ECF No. 41 at 21.) Wierzbicki claims the Officer Defendants conducted an illegal search and seizure of Wierzbicki's person and in doing so used excessive force against him. (*Id.* at 7.) Wierzbicki insists his allegations against the Officer Defendants are sufficient to meet the plausibility standard. (*Id.* at 21.)

Defendants argue Wierzbicki cannot prove individual liabilities of the Officer Defendants, who are not shown to be present at the scene at the time of the Incident. (ECF No. 40-1 at 22.) Defendants state Wierzbicki has not identified which Officer Defendant actually used excessive

force or shown any wrongdoing by Larkins. (*Id*.; ECF No. 42 at 2.) Defendants contend Wierzbicki's OPRA request only produced a CAD ticket that shows the Officer Defendants were present at the location of the Incident during a three-hour window; because many different persons lived and traveled around that location, the CAD ticket cannot indicate the Officer Defendants interacted with Wierzbicki. (ECF No. 42 at 2.) Defendants also challenge the reliability of Wierzbicki's factual allegations, by pointing out: (1) Wierzbicki alleges the third officer who arrived on the scene acted as a Polish translator for him, but Larkins, the alleged third officer, could not speak Polish; (2) the officers identified in the CAD ticket were in plainclothes and operating unmarked vehicles, but Wierzbicki alleges the Officer Defendants were uniformed and operating police vehicles at the Incident; and (3) the CAD ticket indicates the three officers were present in the location for just seven minutes, which is well below the time needed to commit the accused actions done to Wierzbicki, including knocking off, detaining, handcuffing, searching and calling for a Polish translator. (*Id*. at 3–4.) Defendants request dismissal of all of Wierzbicki's claims against the Officer Defendants. (ECF No. 40-1 at 23.)

The Court disagrees with Defendants' suggestion that Wierzbicki must *prove* the Officer Defendants' individual liabilities at this stage. "Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim." *Mendez v. Shah*, 94 F. Supp. 3d 633, 636 (D.N.J. 2015) (citing *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977)). At this stage, a plaintiff need not "set forth an intricately detailed description of the asserted basis for relief." *Id*. (quoting *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149–50 n.3 (1984)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Therefore,

at this stage, Wierzbicki need not present evidence to prove the Officer Defendants' involvement in the Incident; it is sufficient that Wierzbicki's factual allegations raise a reasonable inference of the Officer Defendants' liabilities. *See Rife v. Borough of Dauphin*, 625 F. Supp. 2d 212, 221 (M.D. Pa. 2008) ("Plaintiff . . . need not establish nor prove nor demonstrate anything at the pleading stage. Plaintiff need allege sufficient facts to place the [d]efendants on notice." (citing *Twombly*, 550 U.S. at 555)).

### 1.     The § 1983 and NJCRA Claims Against Larkins Are Inviable

"Section 1983 claims for excessive force arising 'in the context of an arrest or investigatory stop of a free citizen' are most properly analyzed under the Fourth Amendment's guarantee that individuals be free from 'unreasonable searches and seizures.'" *Lopez v. City of Plainfield*, Civ. A. No. 12-4976, 2017 U.S. Dist. LEXIS 10220, at *25 (D.N.J. Jan. 25, 2017) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). "To establish a claim of excessive force under the Fourth Amendment, a plaintiff must demonstrate that, under the totality of the circumstances, the officer's actions were not objectively reasonable in light of the facts and circumstances confronting the officer." *Id*. (citing *Graham*, 490 U.S. at 394). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)). "[P]ermanent or serious injury is" relevant, though not required or dispositive, "in an excessive force claim under § 1983." *Antoine v. Rucker*, Civ. A. No. 03-3738, 2006 U.S. Dist. LEXIS 46824, at *32 (D.N.J. July 11, 2006) (citing *Molton v Cleveland*, 839 F.2d 240 (6th Cir. 1988)). "[T]he issue of whether excessive force was employed must be left to the trier of fact." *Kopec v. Tate*, 361 F.3d 772, 778 n.7 (3d Cir. 2004).

Here, the Second Amended Complaint has alleged affirmative actions that may constitute excessive force used in a search and seizure of Wierzbicki. Alateek and Portuondo are alleged to

have (1) "violently shoved [Wierzbicki] off of his bicycle causing [him] to fall to the ground," (2) handcuffed Wierzbicki "[d]espite [his] obvious and immediate injuries including a swollen wrist," and then (3) "search[ed] [his] pockets, backpack, and cellular telephone cover and wallet." (ECF No. 34 ¶¶ 18, 20–21.) Wierzbicki claims he never resisted and was not given any explanation from the Officer Defendants for their alleged actions. (*Id*. ¶¶ 27, 36.) The Second Amended Complaint also describes the physical and mental injuries that Wierzbicki sustained due to the Incident, including "a fractured right wrist" and permanent "mental and emotional trauma." (*Id*. ¶¶ 37–38, 40.) These allegations raise a reasonable inference that Alateek and Portuondo used excessive force against Wierzbicki. Therefore, Wierzbicki's § 1983 and NJCRA claims against Alateek and Portuondo are viable.

Wierzbicki need not identify which one of Alateek and Portuondo actually used excessive force against him. "[E]ven if [Wierzbicki] is ultimately able to show that both officers were present but only one used excessive force, liability could attach to both because clearly, on [Wierzbicki's] version of facts, each officer had a reasonable opportunity to intervene to prevent the other from using force against [Wierzbicki]." *D'Arrigo v. Gloucester City*, Civ. A. No. 04-5967, 2007 U.S. Dist. LEXIS 44316, at *43 (D.N.J. June 19, 2007) (declining to grant summary judgment for the defendants on the plaintiff's Fourth Amendment claim for excessive force against two police officers). After all, one defendant's "knowledge and acquiescence of [other defendants'] use of excessive force" is "sufficient to . . . hold [the first defendant] liable" for the plaintiff's injury under § 1983. *Adams v. Springmeyer*, Civ. A. No. 11-790, 2012 U.S. Dist. LEXIS 71136, at *42 (W.D. Pa. May 22, 2012) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193–94 (3d Cir. 1995)); *see also Furina v. Gonzalez*, Civ. A. No. 10-2043, 2011 U.S. Dist. LEXIS 95253, at *18 (D.N.J. Aug. 25, 2011) ("To establish liability under § 1983, it is essential that a [p]laintiff demonstrate a

defendant's personal involvement in the alleged civil rights violation. Personal involvement may be established through facts indicating a defendant's 'personal direction or actual knowledge and acquiescence' with respect to the alleged violation." (citations omitted)).

Defendants' challenges on the reliability of Wierzbicki's factual allegations do not change the conclusion. First, whether or not Larkins speaks Polish will not contradict the factual allegations concerning Alateek and Portuondo's use of excessive force. Second, the information in the CAD ticket does not conflict with Wierzbicki's descriptions of the Incident. The Second Amended Complaint asserts the Officer Defendants "failed to file any report, statement, or the like" regarding the Incident. (ECF No. 34 ¶ 32.) Accepting this assertion as true, the Court finds Wierzbicki's OPRA request is unlikely to produce any report on the Incident, which means the information in the CAD ticket likely will not fully match with Wierzbicki's descriptions. Therefore, the CAD ticket is relevant here only to the extent it shows the Officer Defendants may be present at the Incident's location at the relevant time, thereby making their involvement in the Incident plausible.

However, the Second Amended Complaint does not point to any affirmative action of Larkins that may violate § 1983. Instead, only some inactions of Larkins are indicated: (1) "Despite [Wierzbicki's] obvious injuries, none of [the Officer Defendants] . . . called for an ambulance to assist or treat [Wierzbicki];" (2) the Officer Defendants did not provide "any medical aid" to Wierzbicki, when they knew Wierzbicki "was physically assaulted and injured" by Alateek and Portuondo and "there were visible signs of injury;" and (3) the Officer Defendants "failed to file any report, statement, or the like" regarding the Incident. (*Id*. ¶¶ 25–26, 32.) Though a defendant's inaction may trigger § 1983 liability, that inaction must have caused the plaintiff's injury. *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1147 (3d Cir. 1990) ("Only those defendants whose

17

inactions or actions personally caused [a plaintiff's] injury may be held liable under § 1983."); *see also Bhimnathwala v. N.J. State Judiciary, Family Div.*, Civ. A. No. 19-21389, 2020 U.S. Dist. LEXIS 231138, at *26 (D.N.J. Dec. 9, 2020) (dismissing the plaintiff's § 1983 claim, when the "[p]laintiff's sole allegations against" the defendant was the defendant's inactions, and the "[p]laintiff fail[ed] to allege that [the defendant's] inactions personally caused [p]laintiff's injuries" (citing *Baraka*, 481 F.3d at 210)). Here, Larkins allegedly arrived on the Incident's scene after Wierzbicki already sustained injury. (*See* ECF No. 34 ¶¶ 18–24.) Also, Wierzbicki does not allege the Officer Defendants caused him any new injury after Larkins' arrival. Therefore, Larkins' alleged inactions did not cause Wierzbicki's injury. As a result, Wierzbicki's § 1983 and NJCRA claims, *i.e.*, Counts I and VI, against Larkins are inviable.

## 2.    The § 1985 and § 1986 Claims Are Inviable

Because the § 1983 claim against Larkins is inviable, the § 1985 and § 1986 claims against him must also fail. The Court only needs to analyze the viability of the § 1985 and § 1986 claims against Alateek and Portuondo.

For a § 1985 claim "to survive a motion to dismiss," the plaintiff must allege:

> (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

*Voth*, 2016 U.S. Dist. LEXIS 57289, at *29–30 (quoting *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997)). An allegation of conspiracy is insufficient when the plaintiff "fails to plead actual agreement and concerted action sufficient to support any . . . form of conspiracy claim." *Steele v. Pub. Def. Middlesex Cty.*, Civ. A. No. 19-412, 2021 U.S. Dist. LEXIS 127669, at *11 (D.N.J. July 8, 2021); *see also Smith v. Lutheran*, Civ. A. No. 20-174, 2020 U.S. Dist. LEXIS 191817, at *42

(E.D. Pa. Oct. 15, 2020) ("Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." (citations omitted)); *Falat v. Cty. of Hunterdon*, Civ. A. No. 12-6804, 2014 U.S. Dist. LEXIS 163280, at *38 (D.N.J. Nov. 20, 2014) ("[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred. [A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice." (citations omitted)). "To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Campbell v. Gibb*, Civ. A. No. 10-6584, 2012 U.S. Dist. LEXIS 23363, at *25 (D.N.J. Feb. 21, 2012) (quoting *Shearin v. E.F. Hutton Grp., Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989)).

Here, Wierzbicki bases his § 1985 claim on Defendants' "conspiracy to violate the civil rights of [Wierzbicki] based on his race, ethnicity, national origin, or other unlawful basis." (ECF No. 34 ¶ 75.) As to the conspiracy, the Second Amended Complaint further asserts: (1) Defendants "were engaged in a joint venture" during the Incident; and (2) "[t]he unnamed defendants assisted each other in performing the various actions described and lent their physical presence and support, and the authority of their office to each other during the said events." (*Id*. ¶¶ 29, 31.) However, these assertions of conspiracy are insufficient, because: (1) the reference to a joint venture is only a bare assertion of conspiracy; and (2) the description of the actions of "unnamed defendants" does not involve Alateek or Portuondo. In other words, Wierzbicki fails to sufficiently allege Alateek or Portuondo's involvement in a conspiracy against him. Therefore, Wierzbicki's § 1985 claim against Alateek and Portuondo warrants dismissal. As a result, his § 1986 claim against Alateek

and Portuondo must also fail.

Accordingly, Counts IV and V against the Officer Defendants are dismissed.

### 3.    The Assault and Battery Claim Against Larkins Is Inviable

In Part III.C.1, *supra*, the Court has "already determined that [Wierzbicki] ha[s] stated a plausible claim of excessive force under § 1983 as against" Alateek and Portuondo, which means Wierzbicki "ha[s] also stated a viable common law claim of assault and/or battery as against" Alateek and Portuondo, because "both [claims] are predicated on [their] alleged use of excessive force." *Gaymon v. Esposito*, Civ. A. No. 11-4170, 2013 U.S. Dist. LEXIS 116159, at *71–72 (D.N.J. Aug. 16, 2013) (citations omitted); *see also Sanders v. Jersey City*, Civ. A. No. 18-1057, 2021 U.S. Dist. LEXIS 78681, at *55–56 (D.N.J. Apr. 23, 2021) ("Although arrests may involve force that would qualify as an assault or battery, an officer is only liable if the force was excessive. So the analysis for assault and battery tracks the analysis for excessive force." (citations omitted)); *Antoine v. Rucker*, Civ. A. No. 03-3738, 2006 U.S. Dist. LEXIS 46824, at *43 (D.N.J. July 11, 2006) ("A police officer can be held liable for assault and battery if he uses excessive force." (citing *Mantz v. Chain*, 239 F. Supp. 2d 486, 507 (D.N.J. 2002))). As a result, the Court only needs to analyze the viability of the assault and battery claim against Larkins.

A person is subject to liability for the common law tort of assault if: "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1117 (N.J. 2009) (quoting *Wigginton v. Servidio*, 734 A.2d 798, 806 (N.J. Super. Ct. App. Div. 1999)). "Imminent apprehension is interpreted to mean that the person 'must believe that the act may result in imminent contact unless prevented from so resulting by the other's self-defensive action or by his

flight or by the intervention of some outside force.'" *Ruiz v. N.J. Dep't of Corr.*, Civ. A. No. 15-3304, 2020 U.S. Dist. LEXIS 40080, at *22 (D.N.J. Mar. 9, 2020) (quoting Restatement (Second) of Torts § 24). "Courts have been reluctant to protect extremely timid individuals from exaggerated fears of contact and have often stated that the apprehension must be one which would normally be aroused in the mind of a reasonable person." *Powell v. Verizon*, Civ. A. No. 19-8418, 2019 U.S. Dist. LEXIS 161552, at *28 (D.N.J. Sept. 20, 2019) (quoting *Wigginton*, 734 A.2d at 806); *see also Richman v. Valley Hosp.*, Civ. A. No. 988-17, 2017 N.J. Super. Unpub. LEXIS 4120, at *7 (N.J. Super. Ct. Law Div. Oct. 27, 2017) ("In New Jersey, a person may be liable for civil assault only if . . . the plaintiff's fear of imminent apprehension is reasonable."). Here, the Second Amended Complaint does not allege any act of Larkins directed to Wierzbicki. Therefore, Wierzbicki has no factual basis to assert an assault claim against Larkins. Even if Larkins' inaction may satisfy the first prong of an assault claim, it cannot meet the second prong, *i.e.*, being able to put a reasonable person in an imminent apprehension of contact. *See Wigginton*, 734 A.2d at 805–06 (affirming the dismissal of the plaintiff's assault claim, because the defendants did not use force against the plaintiff or "sp[eak] in a forceful, angry, offending, rude, or insolent manner such that it was obvious that defendants were about to physically attack plaintiff").

"[W]ith battery, a plaintiff must allege that there was, in fact, an offensive contact." *Shelley v. Linden High Sch.*, Civ. A. No. 19-20907, 2020 U.S. Dist. LEXIS 203927, at *8 (D.N.J. Nov. 2, 2020) (citing *Leang*, 969 A.2d at 1117); *see also Bullock v. Cabasa*, Civ. A. No. 10-1412, 2014 U.S. Dist. LEXIS 146604, at *33 (D.N.J. Oct. 14, 2014) ("[B]ecause [the defendant] did not touch the plaintiff, an essential element of a claim for battery is missing, and [the defendant] cannot be held liable for battery as a matter of law."). Because the Second Amended Complaint does not

allege any touching by Larkins directed to Wierzbicki, the battery claim against Larkins is not sufficiently pleaded.

Accordingly, Count VIII against Larkins are dismissed.

### 4. The Intentional Infliction of Emotional Distress Claim Is Inviable

"To succeed on a common law cause of action for intentional infliction of emotional distress," a plaintiff must show: (1) the "defendant acted intentionally or recklessly," and "intend[ed] both to do the act and to produce emotional distress;" (2) "the defendant's conduct was extreme and outrageous;" (3) "the defendant's conduct was a proximate cause of the plaintiff's emotional distress;" and (4) "[t]he emotional distress suffered by the plaintiff must be so severe that no reasonable person could be expected to endure it." *Eivich v. E. Greenwich Twp.*, Civ. A. No. 20-6851, 2021 U.S. Dist. LEXIS 42599, at *9–10 (D.N.J. Mar. 5, 2021) (quoting *Ingraham v. Ortho-McNeil Pharm.*, 25 A.3d 1191, 1194–95 (N.J. Super. Ct. App. Div. 2011)). As for the second element, the defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Ingraham*, 25 A.3d at 1195 (quoting *Buckley v. Trenton Saving Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988)). The second element represents "an 'elevated threshold' that is satisfied only in extreme cases." *Id.* (quoting *Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292, 296 (N.J. Super. Ct. App. Div. 2001)). As for the fourth element, the "[p]laintiff's complaint" cannot be "silent as to the nature of [the plaintiff's] alleged emotional distress," which "has been considered sufficiently severe where it interferes with day-to-day activities or requires psychiatric counseling," whereas "aggravation, embarrassment, an unspecified number of headaches, and the loss of sleep are insufficient." *Eivich*, 2021 U.S. Dist. LEXIS 42599, at *11 n.5 (citations omitted).

22

On the second element, the Second Amended Complaint simply alleges "Defendants' conduct was extreme and outrageous" (ECF No. 34 ¶ 94), "without specifying which conduct by which defendant demonstrates the 'elevated threshold' of the second factor that is satisfied only in extreme cases." *Eivich*, 2021 U.S. Dist. LEXIS 42599, at *11 (quoting *Ingraham*, 25 A.3d at 1195). On the fourth element regarding Wierzbicki's emotional distress resulting from the Incident, the Second Amended Complaint refers to his "pain and suffering," "mental and emotional stress," "mental and emotional trauma . . . which continue to this day and are permanent in nature," "[p]sychological trauma, emotional distress, suffering," and "extreme emotional distress." (ECF No. 34 ¶¶ 33–34, 38, 40, 95.) But it "fails to articulate the nature of his 'extreme emotional distress' and how [] 'no reasonable person could be expected to endure it.'" *Eivich*, 2021 U.S. Dist. LEXIS 42599, at *11. Therefore, Wierzbicki's "conclusory allegation that [Defendants'] actions constituted intentional infliction of emotional distress does not satisfy Rule 8(a) or the *Twombly/Iqbal* pleading requirements." *Id*. at *11–12.

Accordingly, Counts IV, V, and IX against the Officer Defendants, as well as Counts I, VI, and VIII against Larkins, warrant dismissal. Nevertheless, the dismissal is without prejudice. The May Opinion did not address Wierzbicki's claims against the Officer Defendants, who were not parties to this case in the original Complaint. This is the first time that the Court has considered these claims, whose factual deficiencies have not been addressed before. As a result, the Court grants Wierzbicki an opportunity to amend these counts.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** on: Count I against Larkins; Counts II through V in their entirety; Count VI against JC, JCPD, and Larkins; Count VII in its entirety; Count VIII against JC, JCPD, and Larkins; Count IX in its entirety; and

Count X as to JC and JCPD. The remaining portions of Defendants' Motion to Dismiss are **DENIED**. Wierzbicki's: Count I against Larkins; Count IV against the Officer Defendants; Count V against the Officer Defendants; Count VI against Larkins; Count VIII against Larkins; Count IX against the Officer Defendants; Count X against JC are **DISMISSED WITHOUT PREJUDICE.** Wierzbicki's: Count II; Count III; Count IV against JC and JCPD; Count V against JC and JCPD; Count VI against JC and JCPD; Count VII; Count VIII against JC and JCPD; Count IX against JC and JCPD; and Count X against JCPD are **DISMISSED WITH PREJUDICE**.


**Date: September 10, 2021**                    */s/ Brian R. Martinotti*
                                                **HON. BRIAN R. MARTINOTTI**
                                                **UNITED STATES DISTRICT JUDGE**